OPINION
This appeal arises from the Columbiana County Court of Common Pleas judgment in favor of Appellee in a contract dispute. For the following reasons, we affirm the judgment of the trial court.
Appellee, the City of Alliance, owns property known as Westville Lakes in northwestern Columbiana County. This reservoir is used as a water supply for Appellee as well as for recreation. The level of the reservoir is primarily controlled by a spillway at the top of the reservoir dam, and secondarily by three outlet pipes through the dam. (Tr. pp. 28-30). The outlet pipes are controlled by valves located at a control tower situated within the reservoir about 10-15 feet from the dam. (Tr. p. 30). The first outlet pipe is located at 1091 feet above sea level, or approximately nine feet below the elevation of the top of the spillway. (Tr. p. 32). The second pipe is nine feet below the first and the third pipe is nine feet below the second. (Tr. p. 32).
In 1984 Appellee commissioned a study which determined that the Westville Lakes spillway needed certain repairs and improvements. In 1993, Appellee hired the engineering firm of Finkbeiner, Pettis and Strout to prepare the bid documents and proposed contract for repairing the spillway. Appellant, W.G. Lockhart Construction Co., Inc., submitted a bid and was awarded the contract.
Prior to the execution of the contract, Appellant was required to verify that it had the proper insurance coverage as required by the contract. (Tr. p. 149). The contract, executed on November 1, 1993, required Appellant to purchase and maintain builders risk insurance which would cover loss or damage to, "* * * the work, temporary buildings, falsework and work in transit * * *" and that would provide coverage for loss due to, " * * * fire, lightning, extended coverage, theft, vandalism and malicious mischief, earthquake, collapse, debris removal, demolition occasioned by enforcement of Laws and Regulations, and water damage." (Contract, p. 13). The contract also contained a provision which required Appellee to lower the water level of the lake to an elevation of 1091.00 and to maintain this lower elevation, " * * * between October 1, 1993 and February 1, 1994 except for Acts of God, flood, heavy rains, etc. and other actions beyond the Owners [sic] control which may alter the water level." (Contract, p. 25).
On January 28 and 29, 1994, as a result of rainfall and melting snow, the water in the reservoir rose to a point where it flowed over the partially constructed spillway improvements, resulting in a need for an additional $672,225.00 in repair work. (5/16/97 Judgment Entry p. 1). On the morning of January 29, 1994, after the damage occurred, Appellant's workers dug a diversion ditch which prevented any further damage to the spillway.
On January 31, 1994, representatives of both parties met to determine how to proceed with the spillway project. The parties agreed that Appellant would repair the damage done by the flooding water, keeping track of the time and material spent, and then would proceed with the remainder of the contractual spillway improvements. (Plaintiff's Ex. 15). The parties did not determine liability for the damage.
Upon the completion of the contract, the parties remained in dispute over liability for the costs of repairs caused by the water overflow on January 28-29, 1994.
Appellant filed a complaint on the contract December 4, 1995, in the Columbiana County Common Pleas Court. On January 21, 1997, Appellant filed a Motion to Amend in order to add a negligence action to the complaint. The motion was denied by Judgment Entry filed on February 11, 1997. Following a bench trial on April 14-15, 1997, the trial court filed an Opinion and Judgment Entry on May 16, 1997, in which he found, inter alia, that:
 1) Appellant failed to purchase "all risks" insurance as required by the contract;
 2) The damage of January 28-29, 1994, occurred as a result of an act of God, namely, heavy rains combined with a mid-winter snow melt;
 3) Appellee was not responsible for maintaining the level of the lake in case of an act of God;
 4) Appellant had assumed the risk of maintaining the level of the lake by assuming control over the drain valves; and
5) Appellee did not breach its contract obligations.
Appellant filed its notice of appeal on May 30, 1997. On May 5, 1998, this Court sua sponte dismissed the appeal for Appellant's failure to file a brief. On May 12, 1998, Appellant filed a Motion for Reconsideration of the dismissal. On June 10, 1998, we sustained Appellant's motion and reinstated this appeal.
Appellant's first assignment of error alleges:
 "THE TRIAL COURT ERRED IN DETERMINING THAT THE DAMAGES WERE CAUSED BY AN `ACT OF GOD'"
Appellant argues that the water damage which occurred on January 28-29, 1994, did not fit within the legal definition of "act of God" as defined by Ohio caselaw. Appellant citesPiqua v. Morris (1918), 98 Ohio St. 42, for the proposition that an act of God is an event which, "could not have been reasonably anticipated, guarded against or resisted." He argues that an act of God is not an event which is foreseeable by the exercise of reasonable foresight and prudence. Hines v. Anthony Carlin Co. (1923),107 Ohio St. 328. Appellant further contends that if proper care and diligence would have avoided the damage, the event is not excusable as an act of God. Bier v. New Philadelphia (1984),11 Ohio St.3d 134.
Appellant also relies on Milton D. Taylor Constr. Co. v. OhioDept. of Trans. (1988), 61 Ohio App.3d 222, for the proposition that a rainfall of approximately two-inches occurring over a period of 28 hours was not an act of God. In that case, a contractor was building a culvert under a road. The record reflected that the 1.84 inches of rain which fell over a 28-hour period was an event likely to occur once per year. The Tenth District Court of Appeals, reviewing a decision of the Court of Claims, held that a one-year frequency rainfall event was foreseeable and therefore not an act of God. Id., 226.
Appellant argues that the evidence in the present case demonstrated a rainfall of 1.29 inches coupled with a snow melt of 3 inches. (Tr. pp. 275, 397). Appellant also argues that Appellee could have prevented the water damage from happening by lowering the water level during or after construction, opening drain valves when the danger first threatened, or, by ordering construction of a diversion ditch before the damage had occurred. Appellant concludes that because Appellee should have foreseen that 1.29 inches of rain in addition to a 3-inch snowmelt could have occurred and that Appellee could have taken reasonable steps to avoid the overflow, no act of God occurred.
Appellee responds that the contract allowed for a number of events which could raise the level of water above 1091 feet. The contract stated, "* * * the water level will be maintained between October 1, 1993 and February 1, 1994 except for acts of God, flood, heavy rains, etc. and other actions beyond [Appellee's] control which may alter the water level." (Contract, p. 25). Appellee argues that even if the combined rainfall-snowmelt was not an act of God, it would still fit within one of the exceptions listed above.
Appellee also argues that the Milton case, supra, dealt with rainfall only, not a combined rainfall-snowmelt. Thus, Appellee believes that the Milton holding is not on point. Appellee argues that there was no evidence of the anticipated frequency of a combined rainfall-snowmelt and that there is no evidence of the foreseeability of such an event. Appellee concludes that the event was not foreseeable and could be considered an act of God.
The construction of a written contract is a matter of law.Latina v. Woodpath Development Co. (1991), 57 Ohio St.3d 212,214. We review questions of law de novo, while we give great deference to a trial court as to determinations of fact. OhioBell Tel. Co. v. Pub. Util. Comm. (1992), 64 Ohio St.3d 145, 147. Moreover, we must give undefined terms in a contract their plain and ordinary meaning. Miller v. Marrocco (1986), 28 Ohio St.3d 438,439.
The record reflects that we need not determine whether the events of January 28-29, 1994, constituted an, "act of God," as the contract allowed for a variety of situations in which Appellee was excused from maintaining the water level at 1091 feet. One of these situations was the occurrence of "heavy rains". (Contract, p. 25). Although the trial court did not expressly base its decision on the fact that heavy rains occurred, a reviewing court should not reverse the decision of a trial court merely because erroneous reasons were assigned as the basis of the decision.State ex rel. Carter v. Schelten (1994), 70 Ohio St.3d 89, 92. Even assuming that the trial court misconstrued the term "act of God," it is clear from the record that the court found that, "* * * there was an extraordinary thaw resulting in a snow melt and significant amounts of heavy rain." (5/16/97 Judgment Entry p. 3). Given the plain meaning of the terms of the contract, and deferring to the findings of fact of the trial court, we find no error in the trial court's judgment that Appellee was not in breach of the contract and not liable for the overflow. Accordingly, this assignment of error is overruled.
Appellant's second assignment of error alleges:
 "THE TRIAL COURT ERRED IN ALTERING THE CLEAR AND EXPRESS TERMS OF THE CONTRACT BETWEEN THE PARTIES."
At issue here is the trial court's finding that:
 "[E]ven assuming that there could be responsibility on behalf of [Appellee] as to the lake levels, [Appellant] had assumed those risks by assuming control over the drain valves in question through their own employees."
(5/16/97 Judgment Entry p. 4)
Appellant argues that the trial court erroneously reallocated the risk of maintaining the water level of the lake to Appellant in contradiction of the clearly expressed intent of the parties to allocate that risk to Appellee. Due to our decision in the previous assignment of error, this assignment of error is moot.
It is well settled that assumption of the risk is not a defense in a contract action. Chase Bank of Ohio v. NealcoLeasing, Inc. (1993), 92 Ohio App.3d 555, 569. Regardless, the record reflects that the trial court concluded that Appellant had assumed the risk of maintaining the water level only as an alternative theory to bolster its decision that Appellee was not in breach of contract. As we have determined that Appellee was not in breach of the express terms of the contract, this assignment of error is moot. App.R. 12(A)(1)(c).
Appellant's third assignment of error alleges:
 "THE TRIAL COURT ERRED BY FINDING THAT PLAINTIFF-APPELLANT HAD FAILED TO COMPLY WITH THE INSURANCE PROVISIONS OF THE CONTRACT BETWEEN THE PARTIES."
Appellant concedes that it was required, by the express terms of Provision 12 of the contract, to purchase and maintain builder's risk insurance written on an "all-risk" policy, and that such policy was required to insure against loss due to water damage. Appellant contends that it did purchase insurance against some types of water damage, but that the purchased policy did not provide flood insurance coverage. This specific type of coverage, necessary to cover the specific loss at issue herein, was not required by contract and, thus, Appellant fully complied with the contract's insurance provisions, contrary to the trial court decision.
Alternatively, Appellant argues that even if it did not purchase the type of insurance required by Provision 12 of the contract, Appellee waived the requirement. Appellant states that it sent certificates of its insurance coverage to Appellee, and that Appellee was satisfied with the coverage certificates and awarded the contract with full knowledge of the extent of insurance coverage. Again, based on our decision in the first assignment, this assignment of error is moot.
Appellee raised as a defense Appellant's failure to secure proper insurance under the contract. However, the trial court's determination on this issue, notwithstanding whether it was the correct decision, is inconsequential. Although the trial court found that Appellant failed to secure insurance as required by the contract, it did not state any further consequences of such a breach. The trial court's determination here is, at best, an alternative theory to exonerate Appellee from liability. We need not address the merits of this decision as we have already determined that Appellee did not breach the contract and is therefore not liable for any damage resulting from flooding of the lake. App.R. 12(A)(1)(c).
Appellant's fourth assignment of error alleges:
 "THE TRIAL COURT ERRED BY NOT GIVING EFFECT TO THE NEW CONTRACT OR TO A MODIFICATION OF THE EXISTING CONTRACT WHICH WAS AGREED TO BETWEEN THE PARTIES AFTER THE WATER DAMAGE."
Appellant argues that it entered into a new or modified contract with Appellee which provided that Appellant would do the necessary repair work and that Appellee would pay for such repair work on a, "time and materials," basis. Appellant relies on the fact that a meeting including both parties was held shortly after the damage occurred wherein the parties determined what repair work was needed. (Tr. pp. 153-157). Appellant also contends that as further evidence that the parties formed a new contract, Appellee ordered Appellant to do the repairs and requested that Appellant keep track of the time and materials spent. This was not required in the original contract. Plaintiff's Ex. 7, 14.
Appellant argues that, on this issue, promissory estoppel should be invoked to establish the terms of a contract when Appellee, as promisor, has made a promise which was calculated to induce action on the part of the promisee (Appellant), where the promisee does, then, act and where injustice can be avoided only by enforcement of the promise. Tally v. Teamsters Loc. 377
(1976), 48 Ohio St.2d 142. Appellant argues that under the circumstances Appellee should be estopped from denying the existence of a new agreement. We can find nothing in the record to support this proposition and, thus, this assignment of error lacks merit, also.
"While the interpretation of the terms of a contract is undertaken as a matter of law, the existence of a contract is a question for the trier of fact." Gruenspan v. Seitz (1997),124 Ohio App.3d 197, 211. As we stated earlier, we must give deference to the trial court's determination of facts. Ohio BellTel. Co. v. Pub. Util. Comm., supra, 147. The trial court did not find that a new or modified contract was formed, in spite of being invited to do so by way of Appellant's Proposed Findings of Fact and Conclusions of Law filed on May 7, 1997. The court found instead no breach of contract on Appellee's part and that the obligation to complete the work as per contract was on Appellant. (5/16/97 Judgment Entry, pp. 4-5). Consistent with the trial court's conclusion, Plaintiff's exhibit 7 does not support Appellant's contention that Appellee agreed to pay for the repair work or that Appellee was in any way admitting liability for the damage. Moreover, any agreement that Appellant should keep a record of time and materials in doing the repairs does not necessarily evidence the formation of a new contract. It is reasonable to conclude from the record before us that this agreement was made to facilitate possible litigation on the issue of liability for damages, as the parties did not agree on this issue nor was it apparently admitted in the meeting to determine a repair plan.
Nothing in the record reveals that Appellee ever agreed to pay more than the original contract price for the completion of the spillway project. It is well established that an express contract is not discharged by subsequent events which may make performance more burdensome, expensive or difficult. London Lancashire Indem. Co. of America v. Board of Com'rs of ColumbianaCounty (1923) 107 Ohio St. 51, syllabus of the court; OhioTurnpike Commission v. Texaco, Inc. (1973), 35 Ohio Misc. 99, 108. As Appellee was not in breach of the contract, Appellant continued in its duty to perform. Although the water damage certainly made the spillway project more expensive to complete, it did not render performance impossible or commercially impracticable. Appellant was therefore still under a duty to complete the spillway under the terms and at the price set in the original contract.
As Appellant was obligated to complete the spillway project, the doctrine of promissory estoppel cannot apply in this case. The rule of promissory estoppel can only be invoked, "* * * if injustice can be avoided only by enforcement of the promise * * *." Talley v. Teamsters Loc. 377, supra, 146. It is not unjust to require Appellant to perform work necessary to complete its primary obligation under the contract.
For all the forgoing reasons, Appellant's fourth assignment of error also lacks merit and is overruled. Accordingly we affirm the judgment of the trial court.
Cox, P.J., concurs.
Donofrio, J., concurs.